MILLARD PROCESSING SERVICES,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

United Food and Commercial Workers,
International Union, Intervenor.

MILLARD PROCESSING SERVICES,
INC., Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

United Food and Commercial Workers,
Union Local 271 AFL–CIO,
Intervenor.

Nos. 92–3474, 92–3631.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1993.

Decided July 30, 1993.

Patrick J. Barrett, Omaha, NE (Roger J. Miller, on the brief), for appellant.

Jill A. Griffin, NLRB, Washington, DC (Howard E. Perlstein, NLRB, on the brief), for appellee.

Before WOLLMAN, Circuit Judge,
FLOYD R. GIBSON, Senior Circuit Judge,
and MORRIS SHEPPARD ARNOLD,
Circuit Judge.

WOLLMAN, Circuit Judge.

Millard Processing Services ("Millard") petitions for review of a decision and order of the National Labor Relations Board; the Board cross-applies for enforcement of its order. We affirm the Board's decision and enforce its order.

## I.

Millard operates a bacon-processing facility in Omaha, Nebraska. Millard employs approximately 275 people, who are divided evenly between two shifts. The first shift ends at 4:30 p.m. and the second shift begins at 5:00 p.m.

Local 271 of the United Food and Commercial Workers Union (the "union") filed a petition to represent Millard's production and maintenance employees. In an attempt to obtain media coverage of the representation election, Patrick O'Neil, the head union coordinator, contacted four Omaha television stations, leaving messages concerning the union campaign and the election. Additionally, O'Neil told Felipe Morales, a union representative, to inform Fernando Castillo about the campaign and election. Castillo, the assistant director of the Information and Service Network ("ISN"), a local production company that produces programming for a cable television station, had previously asked Morales to keep him apprised of any campaign events. Morales telephoned Castillo and informed him that the union was planning to hold a rally outside Millard's plant on June 28, 1990, the day before the election. Castillo told Morales that he would like to visit the Millard plant and interview employees about the election. Morales advised Castillo that the best time to contact employees would be during the shift change.

On June 28, Castillo went to the Millard facility with Morales, arriving at about 3:30 p.m. Castillo set his video camera on a tripod some twenty feet from where O'Neil and other union representatives were distributing leaflets in front of a union banner.

Castillo's camera did not bear any identifying insignia, and he was not wearing anything that associated him with ISN. When Millard employees asked O'Neil about Castillo's identity, O'Neil explained that Castillo worked for a cable television station.

Castillo stayed at the Millard facility for about one and one-half hours. As background footage for his anticipated employee interviews, Castillo filmed the plant, employees entering and exiting the plant, and vehicles entering and exiting the plant parking lot. He also filmed employees as they accepted or declined the material being distributed by the union representatives. Castillo approached two or three employees, identified himself as being from ISN, and asked them what they thought about the union election. All employees that he approached declined to comment, however. Castillo also identified himself to those employees who asked why he was filming. Castillo did not distribute any union material or otherwise campaign for the union while he was at the Millard facility. He did, however, don one of the "Union, Yes" hats that union representatives were distributing.

The election was held the following day, June 29. Of the approximately 240 employees eligible to vote, 114 voted for union representation, and eighty-four voted against it, with ten challenged ballots.

Millard filed objections to the election, alleging, *inter alia*, that the union, through its representatives and agents, had created the impression of intimidating surveillance by using a video camera in front of employees. It contended that by videotaping employees and their automobiles as they declined union pamphlets, the union had intimidated employees, interfered with their free choice, and made a free and fair election impossible.

A Board hearing officer conducted a hearing to consider Millard's objections. Applying the doctrine of apparent authority, the hearing officer found that Castillo had acted as an agent of the union at the time that he videotaped employees. The hearing officer further found that videotaping employees was intimidating and coercive and would reasonably tend to interfere with employee free

choice in an election. Accordingly, the hearing officer recommended that Millard's objections concerning Castillo's videotaping be sustained and that the election be set aside.

The Board rejected the hearing officer's findings and recommendations, finding that Castillo's videotaping of employees did not warrant setting aside the election. *Millard Processing Services, Inc.*, 304 N.L.R.B. No. 99, 1991 WL 187498 (August 27, 1991). The Board found that Castillo had not acted as an agent of the union while videotaping employees. The Board also found that Castillo's videotaping was not objectionable conduct under the Board's standard for assessing third-party conduct during election campaigns. Accordingly, the Board certified the union as the exclusive collective bargaining representative of Millard's employees.

In order to challenge the Board's certification of the union, Millard refused to recognize and bargain with the union and to provide the union with information that it had requested. The Board found that by engaging in such conduct Millard had committed unfair labor practices in violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the "Act"). *Millard Processing Services, Inc.*, 308 N.L.R.B. No. 138, 1992 WL 246282 (September 22, 1992). The Board issued an order requiring Millard to bargain with the union, to furnish the union with the requested information, and to post an appropriate notice to employees.

Millard petitions for review of the Board's order; the Board cross-applies for enforcement of its order. Additionally, the union intervenes in support of the Board's order.

## II.

 Representation elections are not to be set aside lightly. *Beaird–Poulan Div. v. NLRB*, 649 F.2d 589, 592 (8th Cir.1981). The party challenging an election carries a heavy burden: the objecting party must "show by specific evidence not only that improprieties occurred, but also that they interfered with employees' exercise of free choice to such an extent that they materially affected the election results." *Id.* In reviewing the Board's decision concerning whether to set aside an election, the standard is whether "the Board acted within the 'wide degree of discretion' vested in it by Congress regarding representation matters." *Id.* (quoting *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946)).

In some circumstances, the Board has set aside elections in which employees were videotaped or photographed during the election campaign; in other circumstances, however, the Board has refused to do so. For example, in *Pepsi–Cola Bottling Co.*, 289 N.L.R.B. 736, 1988 WL 213816 (1988), the Board overturned an election where, on the day before the election, a union representative videotaped employees as they exited the employer's premises and were offered union leaflets. In *Mike Yurosek & Son, Inc.*, 292 N.L.R.B. 1074, 1989 WL 223861 (1989), the Board set aside an election where, on virtually every day of the campaign, a union agent had photographed prounion and antiunion employees engaging in campaign activity at the employer's entrance gate. On the other hand, in *Nu Skin Int'l, Inc.*, 307 N.L.R.B. No. 46, 1992 WL 87489 (April 22, 1992), the Board refused to overturn an election where a union representative had photographed employees at a union-sponsored picnic on the day before the election.

 In both *Pepsi–Cola* and *Mike Yurosek*, the individual who engaged in the misconduct was a union representative or agent. When misconduct is directly attributable to the union, the Board will overturn the election when the "conduct reasonably tend[ed] to interfere with the employees' free and uncoerced choice in the election." *Pepsi–Cola*, 289 N.L.R.B. at 736. Less weight is accorded to third-party misconduct, however, than to union (or management) misconduct. *Monark Boat Co.*, 713 F.2d 355, 360 (8th Cir.1983); *Beaird–Poulan*, 649 F.2d at 594 (citing *NLRB v. Griffith Oldsmobile, Inc.*, 455 F.2d 867, 870 (8th Cir.1972)). When misconduct is attributable to a third party, the election will be overturned only if the conduct created " 'an atmosphere of fear and reprisal such as to render a free expression of choice impossible.' " *Monark Boat*, 713 F.2d at 360 (quoting *Griffith Oldsmobile*, 455 F.2d at 870). Accordingly, the first inquiry

in this case is whether Castillo was acting as an agent of the union when he videotaped Millard employees.

In rejecting the hearing officer's findings, the Board found that the absence of any identification connecting Castillo to ISN, his wearing a hat promoting unions, and his relatively close proximity to the union organizers and the union banner were insufficient to establish that Castillo had apparent authority to act on behalf of the union. The Board concluded that Millard had failed to show that the union had acted in a manner to cause reasonable employees to believe that Castillo was its agent.

■ "We will enforce an order of the Board if the Board has correctly applied the law and its factual findings are supported by substantial evidence on the record considered as a whole, even though we might have reached a different decision had the matter been before us de novo." *Wilson Trophy Co. v. NLRB,* 989 F.2d 1502, 1507 (8th Cir.1993) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). We apply the substantial evidence standard even in those cases in which the Board, as it did here, reverses the decision of the hearing officer. *GSX Corp. v. NLRB,* 918 F.2d 1351, 1356 (8th Cir.1990) (citing *Paintsmiths, Inc. v. NLRB,* 620 F.2d 1326, 1329 (8th Cir.1980)). Nonetheless, because the hearing officer's factual findings are part of the record against which the substantiality of the evidence must be measured, we will review the Board's contrary findings more critically in those cases. *Id.* (citing *Colson Equip., Inc. v. NLRB,* 673 F.2d 221, 223 (8th Cir.1982)).

■ In determining whether an individual was acting as an agent of a union for the purposes of the Act, we apply general common law principles of agency. *NLRB v. International Bhd. of Boilermakers Local 83,* 321 F.2d 807, 810 (8th Cir.1963); *Alliance Rubber Co.,* 286 N.L.R.B. 645, 645, 1987 WL 89984 (1987). Whether an individual was a union agent is a question of fact. *Boilermakers Local 83,* 321 F.2d at 810. The party asserting the agency relationship bears the burden of establishing its existence. *Sunset Line & Twine Co.,* 79 N.L.R.B. 1487, 1508

(1948) (citing *Gosney v. Metropolitan Life Ins. Co.,* 114 F.2d 649, 653 (8th Cir.1940)).

■ Apparent authority results from a manifestation by a principal to a third party that reasonably leads a third party to believe that another person is acting as the principal's agent. *NLRB v. Donkin's Inn, Inc.,* 532 F.2d 138, 141 (9th Cir.) (citing *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.,* 414 F.2d 750, 756 (9th Cir.1969)), *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976); *Restatement (Second) of Agency* §§ 8, 27 (1958). The manifestations may consist of direct statements to the third party or of the granting of permission to the other person to do something which reasonably leads the third party to believe that that person has the authority to perform those acts. *Id.* To create apparent authority, the principal must either intend to cause the third party to believe that the agent is authorized to act for it, or should realize that its conduct is likely to create such a belief. *Restatement (Second) of Agency* § 27 cmt. a (1958). Only information actually communicated to and known by a third party can establish apparent authority. *Id.* § 27 cmt. b.

■ In arguing that Castillo was the apparent agent of the union, Millard points out that the union informed Castillo about the rally, told him when he could film the most employees, and drove him to the Millard facility. As the Board found, however, these facts are irrelevant to establishing apparent authority because there is no record evidence that any employees were aware that the union had done these things.

Millard also points out that Castillo, who wore no identification connecting him to ISN, placed his camera near the union organizers and a union banner and wore a union hat while filming employees. Additionally, Millard stresses that the union did not affirmatively disavow Castillo's actions to all employees; rather, the union explained Castillo's identity only to those employees who asked

about him. Millard argues that under these facts the union knew or should have known that when employees observed Castillo filming at the plant they would reasonably believe that he was acting on the union's behalf.

 We affirm the Board's finding that Castillo's conduct in wearing a hat with a generalized prounion statement and in filming in close proximity to the union organizers and banner did not establish his apparent authority to act on the union's behalf. We have recognized that even engaging in union campaign activity (which Castillo did not do) is insufficient by itself to clothe a person with apparent authority to act on behalf of the union. *See Beaird–Poulan,* 649 F.2d at 594 (citing *Certain–Teed Prods. Corp. v. NLRB,* 562 F.2d 500, 509–10 (7th Cir.1977)). We note that when employees asked union organizer O'Neil about the cameraman's identity, O'Neil indicated that Castillo worked for a local cable television station. Likewise, Castillo identified himself as being from ISN to every employee whom he attempted to interview or who asked why he was filming. In short, we conclude that Castillo's presence and conduct at the scene did not constitute manifestations by the union sufficient to declare to third parties that Castillo was the union's agent.

We next consider whether Castillo's conduct was such that it requires that the election be set aside. As stated earlier, when alleged misconduct is attributable to a third party, the test is whether the conduct created "'an atmosphere of fear and reprisal such as to render a free expression of choice impossible.'" *Monark Boat,* 713 F.2d at 360 (quoting *Griffith Oldsmobile,* 455 F.2d at 870).

In arguing that Castillo's videotaping created a coercive environment, Millard emphasizes that Castillo filmed employees as they declined union literature. Millard also stresses that the videotaping occurred on the eve of the election during the shift change when a large number of employees may have seen or been subjected to the filming. Citing *Pepsi–Cola* and *Mike Yurosek,* Millard argues that under these circumstances, a sig-

nificant number of employees might have felt that their responses to the union campaign activity were being recorded for the purpose of future union retaliation.

This case is distinguishable from *Pepsi–Cola* and *Mike Yurosek* on several grounds. As we have already discussed, both of those cases involved the conduct of a union agent and not, as here, the conduct of a third party.

 Moreover, in determining whether the filming of employees created a coercive atmosphere, the Board examines whether a legitimate explanation for the filming has been presented. In *Pepsi–Cola,* the Board emphasized that the union had not provided a legitimate explanation for the videotaping to the employees at the time of the filming or at the hearing. 289 N.L.R.B. at 737. Likewise, in *Mike Yurosek,* the Board again noted that the union had not offered a valid explanation for photographing employees engaged in antiunion activity. Indeed, the union agent who took the photographs had told an antiunion employee that "We've got it on film; we know who you guys are ... after the Union wins the election some of you may not be here." 292 N.L.R.B. at 1074. On the other hand, in *Nu Skin Int'l,* the Board distinguished *Pepsi–Cola* and *Mike Yurosek* and declined to set aside an election in view of the fact that the union had provided a legitimate explanation for the photographing. 307 N.L.R.B. No. 46, slip op. at 2–3.

 In the present case the union offered a legitimate explanation for the videotaping. The hearing officer and the Board both found that O'Neil and Castillo had informed some twenty employees that Castillo was filming for a cable television station. True, the union and Castillo did not explain Castillo's identity to all of the employees who either were filmed by Castillo or who observed him filming. Nevertheless, where the person videotaping was not a party to the election and where the record contains no evidence of violence or threats or any other facts establishing a coercive atmosphere during the election campaign, we are unwilling to find that the absence of an employee-wide expla-

nation requires overturning the election. *Cf. Sunbelt Mfg., Inc.,* 308 N.L.R.B. No. 110, 1992 WL 230488 (September 11, 1992) (finding that management's videotaping of employee handbilling had reasonably tended to interfere with and restrain employees in the exercise of section 7 rights where management had not explained the purpose of the filming to the general work force and had unlawfully threatened to close the plant, reduce wages, and discharge a known union supporter).

■ Finally, conduct during an election campaign must be evaluated in the light of the closeness of the election's outcome. *NLRB v. Van Gorp Corp.,* 615 F.2d 759, 766 (8th Cir.1980) (citing *NLRB v. Skelly Oil Co.,* 473 F.2d 1079, 1085 (8th Cir.1973)). In both *Pepsi–Cola* and *Mike Yurosek* the elections were extremely close: twenty-eight votes for union representation and twenty-six against in *Pepsi–Cola,* 289 N.L.R.B. at 736, and 292 votes for and 290 against, with one challenged ballot, in *Mike Yurosek,* 292 N.L.R.B. at 1074. In this case, however, the election was not nearly so close: 114 votes for representation and eighty-four against, with ten challenged ballots. Accordingly, we conclude that the Board did not err in finding that Castillo's videotaping did not create an atmosphere of fear and reprisal, did not render the employees' free choice impossible, and thus did not warrant invalidating the election.

The petition for review is denied, and the Board's order is enforced.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent and would affirm the hearing officer's recommendation that the election results be set aside. Under the factual situation presented here, the videotaping was intimidating and coercive, and could reasonably interfere with an employees' free choice in the election. Castillo's appearance in a "Union, Yes" hat in close proximity to the union banner created the impression that he was a union representative. Castillo wore no identification that connected him to the ISN station; to an employee leaving the plant, Castillo appeared to be a union representative filming employees accepting or declining union literature. The union orchestrated the event by contacting Castillo and arranging for the filming during a shift change on the eve of the election; the filming of the employees and their vehicles, by an individual who appeared to be a union representative, created a coercive atmosphere that interfered with the employees' exercise of free choice.

If Millard had orchestrated the identical event on the eve of the election, the election would undoubtedly be thrown out and a new election properly ordered. Thus, I respectfully dissent, and would reverse the Board's decision and order a new election.