12-4313-pr
Nielsen v. Rabin

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

——————————

August Term, 2013

(Submitted: November 19, 2013          Decided: February 13, 2014)

Docket No. 12-4313-pr

——————————

CHARLES NIELSEN

*Plaintiff-Appellant*,

– v. –

ELAINE A. RABIN M.D.,

*Defendant-Appellee*,

BILL DE BLASIO, MAYOR--NYC; MICHAEL A. STOCKER M.D. CHAIRPERSON-NYC-HHC; CHRISTOPHER CONSTANTINO, EXEC.DIR.ELMHURST HOSP.; SYLVIA TSCHENYAVSKY M.D.,

*Defendants.*[*]

——————————

Before:  KEARSE, JACOBS, AND STRAUB, *Circuit Judges.*

——————————

[*] The Clerk of Court is directed to amend the official caption of this case to conform to the listing of the parties shown above.  Mayor de Blasio has been substituted for Mayor Bloomberg pursuant to Fed. R. App. P. 43.

Appeal from an order of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*) granting the defendant's motion to dismiss and denying the plaintiff leave to amend his complaint. We hold that amendment would not be futile and that leave to amend should have been granted. Accordingly, we **REVERSE** the decision to deny leave to amend and **REMAND** to the District Court for further proceedings consistent with this opinion.

Judge JACOBS dissents in a separate opinion.

———————————

CHARLES NIELSEN, *pro se*, *Plaintiff-Appellant*, Ridgewood, N.Y.

TAHIRIH SADRIEH, Assistant Corporation Counsel (Edward F. X. Hart, *on the brief*) *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, N.Y., *for Defendant-Appellee.*

———————————

STRAUB, *Circuit Judge*:

*Pro se* plaintiff Charles Nielsen brought suit against defendant Dr. Elaine A. Rabin, among others, under the Fourteenth Amendment for deliberate indifference to his serious medical needs. The District Court (Eric N. Vitaliano, *Judge*) dismissed the complaint on the ground that Nielsen did not adequately allege an element of his deliberate indifference claim: that Dr. Rabin had a sufficiently culpable state of mind. The court also denied Nielsen leave to amend his complaint because additional allegations in Nielsen's brief in opposition to

Dr. Rabin's motion to dismiss did not cure the deficiencies in his complaint. This, the court reasoned, showed that amendment would be futile.

We conclude that the allegations in the complaint and the opposition brief, taken together, sufficiently set forth the mental state element of the claim. Accordingly, amendment would not be futile, and Nielsen should have been granted leave to amend. We therefore **REVERSE** the decision to deny leave to amend and **REMAND** to the District Court for further proceedings consistent with this opinion.

**BACKGROUND**

The allegations recited below are taken from the complaint, and we assume they are true for the purposes of this appeal.

Nielsen was beaten by members of the New York City Police Department. His collarbone was fractured, and he sustained a SLAP type labral tear.[1] Nielsen also had injuries to his face, ultimately leaving permanent scarring and requiring

---

[1] SLAP is an acronym for "Superior Labrum from Anterior to Posterior" – a specific type of labral tear that occurs at the point where the tendon of the biceps muscle inserts on the labrum. *See* Jonathan Cluett, M.D., *SLAP Tear: What is a SLAP tear?*, ABOUT.COM ORTHOPEDICS (updated March 17, 2013), http://orthopedics.about.com/cs/generalshoulder/a/slap.htm.

two nose surgeries. Additionally, he became legally deaf in one ear and has reduced hearing in the other.

After the beating, Nielsen was taken to the emergency room in a wheelchair where he complained of severe pain in his shoulder and back and a broken nose. There, he was evaluated by Dr. Rabin and Dr. Sylvia Tschenyavsky. Even though Nielsen screamed when his shoulder was lightly touched, the doctors reported that his level of pain and discomfort was low: a two out of ten. The doctors diagnosed Nielsen as having "mild bruising" and suggested that he was "malingering" – fabricating or exaggerating his symptoms. No X-rays, CT-scans or MRIs were performed, and no significant treatment was provided. The doctors recommended only that Nielsen be reevaluated within a week.

Nielsen alleged all the above facts in his complaint. Rabin moved to dismiss, and Nielsen filed a brief in opposition, arguing that he had stated a claim for deliberate indifference under the Fourteenth Amendment. In that brief, Nielsen set forth an additional allegation: that the officers who brought him to the emergency room told Dr. Rabin that he had attacked a female police officer and that he should be ignored and left alone. According to Nielsen, no such

4

attack actually occurred. Nielsen also alleged that Dr. Rabin allowed herself to be influenced by the officers.

The District Court concluded that Nielsen's complaint did not state a claim for deliberate indifference because he did not adequately allege that Dr. Rabin acted with a sufficiently culpable state of mind. The court also denied leave to amend on the ground that amendment would be futile. The court reasoned that the complaint still would not state a claim even if augmented by the new allegations contained in Nielsen's brief. Ultimately, the court dismissed Nielsen's federal claims with prejudice and declined to exercise supplemental jurisdiction over any state law claims. This appeal followed.

**DISCUSSION**

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and

5

quotation marks omitted).  However, "leave to amend a complaint may be denied when amendment would be futile."  *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006).  "When the denial of leave to amend is based on . . . a determination that amendment would be futile, a reviewing court conducts a *de novo* review."  *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

The District Court ruled that amendment was futile because, even considering the facts set forth in the opposition to the motion to dismiss, Nielsen did not adequately allege the mental state element of his deliberate indifference claim.  We disagree.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  Accordingly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement . . . ." *Id.* (internal quotation marks omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks omitted).

"Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted).

In this case, the allegations in the complaint and the opposition brief sufficiently set forth the mental state element of his claim – that "the charged

---

[2] The dissent's belief that we do not appreciate that this is a personal claim against Dr. Rabin boils down to an argument that the Federal Rules of Civil Procedure should apply differently based on the financial resources of the parties. The "rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ." Fed. R. Civ. P. 1. We require the same "short and plain statement of the claim" for everyone who comes before us, no matter their net worth or calling in life. *See* Fed. R. Civ. P. 8.

7

official . . . act with a sufficiently culpable state of mind," *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). We have described this mental state element in some detail: "In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* "Deliberate indifference is a mental state equivalent to subjective recklessness . . . . This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."[3] *Id.* (internal citation omitted).

Reading the *pro se* complaint and opposition brief liberally, Nielsen sufficiently alleged the required mental state, especially considering that "intent is rarely susceptible to direct proof." *See Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (discussing discriminatory intent in an equal protection case).

---

[3] The deliberate indifference claim in *Salahuddin* was based on the Eighth Amendment. 467 F.3d at 279. Here, Nielsen's deliberate indifference claim is based on the Fourteenth Amendment because his claim arises in the context of pretrial arrest and detainment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). However, this distinction is not material because "[c]laims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72.

8

According to Nielsen: Officers told Dr. Rabin not to treat him because he had attacked a female officer, and Dr. Rabin allowed herself to be influenced by those statements. Dr. Rabin then only minimally examined Nielsen, despite his complaints of severe pain from significant injuries. She also reported that Nielsen was in a low amount of pain even though accepting his allegations as true, he had, *inter alia*, a SLAP type labral tear and a broken collar bone, and he screamed when his shoulder was touched lightly. Her only recommendation was that Nielsen be reevaluated.

In concluding that Nielsen should not be granted leave to file an amended complaint, the District Court relied on medical records proffered by the defendants, which it regarded as refuting Nielsen's new assertions of statements by police officers inducing deliberate indifference on the part of Dr. Rabin. In so doing, the court inappropriately resolved issues of fact. The court was not entitled to rely on the medical records to conclude that granting leave to amend would be futile.[4]

---

[4] The dissent also relies on these medical records without appreciating that the complaint relied on the records only to show what treatment Nielsen received at the hospital, not for the truth of their descriptions of his actual condition or complaints of pain. The medical records' description of his complaints is only

9

"Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. We would love to live in a world where it is implausible for a doctor to disregard her oath and refuse to treat a patient she believed had attacked a female officer – just as we would love to live in a world where it is implausible for an employer to be so irrational as to refuse to hire a qualified applicant because of the applicant's skin color. Unfortunately, we do not.[5] Taking the allegations in Nielsen's complaint and his opposition brief as true, Nielsen can plausibly allege that Dr. Rabin acted with a sufficiently culpable state of mind.

the defendants' version of the events. Nielsen asserts that he had suffered the serious injuries described above and asserts, as the dissent acknowledges, that he complained of being in "severe pain." By assuming that the records are true where they contradict the allegations in the complaint, the dissent turns the Rule 12(b)(6) standard on its head.

[5] The dissent's analogy to a criminal defense attorney tanking his own case highlights the danger of treating allegations that we may suspect and hope are false as "implausible." This conduct does occur. For example, in *State v. Tucker*, the defendant's post-conviction relief counsel "deliberately sabotaged" his case because he felt that his client, who had been sentenced to death, deserved to die and should be executed for his crimes. 353 N.C. 277, 277-78 (2000); *see also The North Carolina State Bar v. David B. Smith*, 02 DHC 14, ¶ 12 (Disciplinary Hearing Comm'n of the N.C. State Bar Feb. 11, 2003), *available at* http://www.ncbar.gov/orders/volume%205/06050395.pdf.

## CONCLUSION

If Nielsen's complaint were amended to include the allegations in his opposition to the motion to dismiss, the complaint would sufficiently set forth the mental state element of his deliberate indifference claim. Thus, amendment would not be futile. We therefore **REVERSE** the decision to deny leave to amend and **REMAND** to the District Court for further proceedings consistent with this opinion.

DENNIS JACOBS, Circuit Judge, dissenting:

I respectfully dissent.

It is common ground that Nielsen's initial complaint was properly dismissed. It alleged that he received minimal medical treatment for serious injuries after police officers informed his treating physicians that Nielsen had attacked two of the officers.[1] The majority and I agree that these allegations, even if proven, cannot sustain a Fourteenth Amendment due process claim for deliberate indifference.[2] See Majority op. at 3, 11. The holding of the majority is that an amended complaint would survive if augmented by two incremental allegations made in Nielsen's opposition to the motion to dismiss: that the officers accompanying Nielsen told Dr. Rabin that (1) one of the officers Nielsen attacked was a woman, and (2) Nielsen "should be ignored and left alone." I am of the view that these two allegations do not render plausible the claim that Dr.

---

[1] See Compl. at 4 ("The Police Officer's [sic] stated to said Doctor's [sic] that I had 'beat up two police officer's [sic].' . . . [No] significant testing was performed and no significant treatment was provided at the time.").

[2] Nielsen alleged a violation of his Fourteenth Amendment due process rights because the alleged withholding of medical attention took place during his pretrial arrest and detainment. The claim is analogous to an Eighth Amendment claim of deliberate indifference, and is governed by the same body of law.

Rabin withheld medical services from a patient with serious visible injuries.[3]

It is implausible that a doctor would neglect a patient at the request of a malicious policeman.  In any event, the claim is defeated by a review of the medical file (attached as an exhibit to the declaration of counsel in support of Dr. Rabin's motion to dismiss).  It reflects that Nielsen did not report symptoms indicative of serious injury, that Nielsen was examined by multiple medical professionals, that some treatment was administered, that what was done reflected a medical consensus, and that Nielsen was told to return for follow-up attention.  The claim thus becomes that two doctors violated their oaths and that a nurse falsely reported that Nielsen was in a low level of pain at the time of discharge, all at the behest of police officers who told the doctors that their patient should be neglected.  This claim, which is absurd, is easily classed as implausible.

The chief error of the majority opinion is to ignore the medical record, which is expressly referenced and relied upon in the complaint--and which may

---

[3] Although leave to amend should be granted to a pro se plaintiff at least once, this applies only "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

therefore be considered on a motion to dismiss. <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).

# I

"[A] complaint is deemed to include any . . . documents incorporated in it by reference." <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991). True, "not every document referred to in a complaint may be considered incorporated by reference." <u>Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 156–57 (2d Cir. 2006). But a document that is relied on in plaintiff's drafting of the complaint may be considered on a motion to dismiss. <u>See</u> <u>Time Warner</u>, 282 F.3d at 153 ("'[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" (quoting <u>Cortec</u>, 949 F.2d at 48)). This rule has been applied with equal force to <u>pro se</u> plaintiffs. <u>See, e.g.</u>, <u>Youssef v. Halcrow, Inc.</u>, 504 F. App'x 5 (2d Cir. 2012); <u>Lobaito v. Chase Bank</u>, 529 F. App'x 100 (2d Cir. 2013).

Nielsen's complaint invokes the medical record in support of allegations about his injuries at arrival in the emergency room, his treatment, his discharge plan, and his condition at discharge. The complaint quotes the medical record directly twice and refers to it no less than five times. (Quotes and references are in the margin.[4]) The medical record was therefore properly considered by the district court on the motion to dismiss.

The medical record confirms that Nielsen's claims are implausible. He arrived at the emergency room of Elmhurst Hospital Center around 8pm on March 17, 2008. His chief complaint on arrival, according to the triage notes written by nurse Anna Ford, was: "My back hurts." Nielsen reported lower right-sided back pain and reported that this condition had been chronic for 30 years. Also, Nielsen had an abrasion on the bridge of his nose extending above the left eyebrow, which was not bleeding.

---

[4] "[T]here were multiple abrasions in my facial areas as noted in the medical report. . . . The defendant Doctor's [sic] then released me to the custody of the New York City Police Department with a statement that I was alert and oriented, and my level of pain and discomfort was at '2/10' (indicating a low level of pain in their opinion) and I was ambulatory. Their only discharge plan was for me to be re-evaluated within one week. This despite the fact that they stated in their triage report that I screamed when lightly touched when my shoulder was touched. Th[ei]r diagnosis was that I had merely sustained mild bruising and there was no evidence of a spinal injury, suggesting I was simply 'MALINGERING.'" Compl. at 4.

According to her notes, Dr. Rabin approached Nielsen as he slept a few hours later, and he screamed when she tapped him on the shoulder to wake him up. Nielsen complained of lower back pain and reported that the police had assaulted him "with fists all over." Dr. Rabin found no bruising on Nielsen's back and no evidence of a spinal injury; she could not determine an area of localized tenderness; and she found that Nielsen had full range of motion. Dr. Rabin's assessment was lower back pain, possibly mild bruising, or malingering.

Shortly after, a second physical examination was done by Dr. Sylvia Tschenyavsky, who recorded her findings on the chart. Nielsen's neck and face were non-tender. Nielsen's "[n]ose appears with 2cm abrasion on nasal bridge no swelling. The mucosa and septum are without evidence of trauma. No septal hematoma noted. There is no rhinorrhea." Nielsen's hearing was okay. (He claims he suffered hearing loss.) Heart rate and rhythm, and respiratory rate and effort were all normal. A musculoskeletal examination disclosed no gross deformities, full range of motion, no edema, no signs of trauma to the back, and no paraspinal tenderness. Dr. Tschenyavsky diagnosed lower back pain.

Nielsen was directed to follow up with the Diagnostic Clinic one week later at the Rikers Island Correctional Facility. When he was discharged at

3:30am, nurse Marie Fleurantin recorded that Mr. Nielsen was alert and oriented, and that he had a pain level of two on an ascending scale of one to ten.

That medical record forecloses a finding that Dr. Rabin had the mental state that amounts to deliberate indifference: actual awareness and disregard of "a substantial risk that serious inmate harm will result." See Majority op. at 8. The risk of "serious inmate harm" must be dire: "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Nielsen's complaint, viewed together with the medical record (and his opposition brief), fails to plausibly allege that Dr. Rabin was aware that Nielsen had an urgent condition requiring immediate treatment. The contemporaneous notes recorded by two doctors and three nurses reflect no complaint by Nielsen of a broken nose (or any of the other serious injuries he alleges).

Nielsen's allegation that he "complained of severe pain" is contradicted by the nurse's note that at discharge his pain level was at the low end of the spectrum. Nielsen may have screamed when he was tapped to rouse him from sleep, but that startled reaction does not support a plausible claim that Nielsen was in "severe pain." There is no indication that Nielsen screamed (or otherwise

6

expressed discomfort) during two physical examinations in which the doctors palpated his face, neck, chest, back, and shoulders.

Nielsen's claim is not rendered plausible by the police officers' alleged advice to Dr. Rabin that Nielsen "should be ignored and left alone." Dr. Rabin and another doctor and nurses all examined Nielsen and treated him. And Dr. Rabin's discharge plan prescribed re-evaluation in a week's time. We need not consider whether, in the circumstances, the medical staff should have taken X-rays, or done a CT-scan or MRI; such omissions (assuming they were indicated) might support a malpractice claim, but they do not sustain a claim of deliberate indifference. "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ." Estelle v. Gamble, 429 U.S. 97, 105 (1976).

**II**

The majority opinion reflects two fallacies that are indulged with some frequency in our opinions.

First, there is insufficient appreciation that this section 1983 action is a personal claim against the individual assets of Dr. Rabin, and that the defense

7

costs of such a claim alone can wipe out a college fund or equity on a home. <u>See,</u> <u>e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("[A]n award of damages against an official in his personal capacity can be executed only against the official's personal assets . . . ."). The plausibility test in cases such as this is a safeguard against a financial injustice that can often outweigh the harm claimed by a plaintiff. True, some or many defendants are indemnified by employers or insurers (though insurance may not cover intentional acts); but such an arrangement would be *dehors* the record, and may not be considered by us in deciding whether a claim survives through the expense of discovery and extended motion practice. <u>See</u> <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 162 n.6 (2d Cir. 2013).

Second, the majority's ruling on plausibility unintentionally implies a certain disrespect for the ethics of doctors and nurses. The majority deems it plausible that each of these medical professionals (and all of them together) would allow a patient's suffering to go unabated at the say-so of policemen expressing hostility to a person in custody. We would never deem such dereliction plausible if alleged against a lawyer. An analogy illustrates the point.

8

It often happens that criminal defendants who are convicted accuse their lawyers of being in league with the prosecutor to sabotage their defense.[5] And in every criminal trial, the prosecutor tells the courtroom, including the defense counsel sitting right there, that the defendant has committed offenses that justify punishment. I cannot think that we would deem it plausible that a defense lawyer would bring about his client's conviction at the behest of the prosecutor, and I cannot think that such an allegation would be deemed plausible even if defense counsel was deficient, or ineffective, or failed to take appropriate measures.

The betrayal of a client seems to us (as lawyers and judges) wholly implausible because we internalize certain professional values. I would extend the same respect to the medical and nursing profession in this analogous case.

* * *

---

[5] See, e.g., United States v. Smith, 640 F.3d 580 (4th Cir. 2011); Azania v. Bechert, No. 98-1648, 172 F.3d 52, 1999 WL 38092 (7th Cir. Jan. 8, 1999); Williams v. Silverman, No. 12-974, 2013 WL 6578980 (E.D. Pa. Dec. 16, 2013); Richard v. Girdich, No. 3-cv-920, 2009 WL 2045685 (N.D.N.Y. July 10, 2009); Jones v. Diner, No. 9-cv-204, 2009 WL 1285842 (E.D. Ark. May 5, 2009); Pitts v. Wynder, No. 5-cv-1038, 2006 WL 2092582 (E.D. Pa. July 24, 2006); Stifel v. Lindhorst, 393 F. Supp. 1085 (D.C. Pa. 1975), aff'd, 529 F.2d 512 (3d Cir. 1975).

The complaint was properly dismissed, and the district court had no duty to allow an amendment that would be futile for the reasons I have outlined.