18-3467-cv
*Edwards v. Sequoia Fund, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2018

(Argued: June 13, 2019     Decided: September 9, 2019)

Docket No. 18-3467-cv

THOMAS EDWARDS AND MICHAEL FORTUNE, individually and on behalf of all
others similarly situated,

*Plaintiffs-Appellants,*

*v.*

SEQUOIA FUND, INC., A Maryland Corporation,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

LEVAL, POOLER, AND CHIN, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the

Southern District of New York (Daniels, *J.*) dismissing claims against defendant-

appellee mutual fund pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs brought a putative class action on behalf of shareholders alleging that

the mutual fund breached a contractual obligation not to concentrate its

investments in a single industry. The district court granted the motion to

dismiss, holding that there was no enforceable contract and, even assuming there

was a binding contract, there was no breach. Plaintiffs appeal, contending that

the district court erred in both respects. We agree with the district court's

alternative holding.

AFFIRMED.

FELICIA S. ENNIS (Alan M. Pollack, *on the brief*), Robinson Brog Leinwand Greene Genovese & Gluck, P.C., New York, New York, *and* Raymond Farrow *and* Mark A. Griffin, Keller Rohrback L.L.P., Seattle, Washington, *on the brief, for Plaintiffs-Appellants*.

ROBERT A. SKINNER (Amy D. Roy *and* Lee S. Gayer, *on the brief*), Ropes & Gray LLP, Boston, Massachusetts, *and* New York, New York, *for Defendant-Appellee*.

CHIN, *Circuit Judge*:

Defendant-appellee Sequoia Fund, Inc. (the "Fund"), a mutual fund, adopted an investment policy that it may not concentrate its assets, as concentration is defined in the Investment Company Act of 1940 (the "1940 Act"), 15 U.S.C. §§ 80a-1 *et seq.*, and attendant regulations and guidance. In 1998, the Securities and Exchange Commission (the "SEC") adopted guidance defining "concentration" as having "more than 25 percent of the value of [the fund's] assets in any one industry." *See* Registration Form Used by Open-End Management Investment Companies, 48 Fed. Reg. 37,928, 37,962 (Aug. 22, 1983) ("1983 Guidance"). The Fund disseminated the investment policy annually in its prospectus and registration statement filed with the SEC.

Plaintiffs-appellants Thomas Edwards and Michael Fortune ("Plaintiffs"), shareholders of the Fund, brought this putative class action alleging that the Fund entered into a contract with its shareholders to observe that policy, and that the Fund breached this contract when, due to an increase in the value of its healthcare assets, the value of those assets came to exceed 25% of its overall assets. The district court granted the Fund's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), holding that there was no enforceable

3

contract and, even assuming there was an enforceable contract, there was no breach.

On appeal, Plaintiffs allege that the district court erred in both respects. For the reasons set forth below, we agree with the district court's second reason and therefore AFFIRM the judgment of the district court.

## STATEMENT OF THE CASE

**A.    *Background***

The Fund is an open-ended investment company, *i.e.*, a mutual fund, organized under Maryland law and registered under the 1940 Act, 15 U.S.C. §§ 80a-1 *et seq.* As a mutual fund, the Fund sells shares of the Fund to investors and pools this money to invest in, among other things, equity securities of different companies. The Fund's shares are "offered only to persons in the United States by way of a prospectus." App'x at 11.

Under the 1940 Act, the Fund must file an annual registration statement with the SEC, comprised of a statement of additional information ("SAI") and a prospectus. *See* 1983 Guidance, 48 Fed. Reg. at 37,929. As required by the 1940 Act, the Fund's SAI, which was incorporated by reference into its prospectus, includes fourteen "investment restrictions" it adopted "as a matter of

4

fundamental investment policy, which may not be changed without a stockholder vote of a majority of the outstanding securities as defined in Section 2(a)(42) of the 1940 Act."  App'x at 35; *see* 15 U.S.C. § 80a-8(b)(1)-(2).[1]

One such restriction (the "Concentration Policy") included in the Fund's May 2015 SAI, and incorporated by reference into its May 2015 prospectus, states that "[t]he Fund may not . . . [c]oncentrate investments in an industry, as concentration may be defined under the 1940 Act or the rules and regulations thereunder . . . or by guidance regarding, interpretations of, or exemptive orders under, the 1940 Act or the rules or regulations thereunder published by appropriate regulatory authorities."  App'x at 35-36.

While neither the 1940 Act nor any rule or regulation promulgated pursuant to the 1940 Act defines "concentration," the SEC has twice provided guidance on concentration policies.  *See* App'x at 36 (adopting definition of "concentration" as "may be defined . . . by guidance . . . published by appropriate regulatory authorities").  In 1983, the SEC adopted Form N-1A, the registration

---

[1]     In relevant part, the 1940 Act requires that a registration statement include "a recital of the policy of the registrant [with] respect [to] . . . concentrating investments in a particular industry or group of industries."  15 U.S.C. § 80a-8(b)(1).  In addition, the 1940 Act requires that a registration statement include "a recital of all investment policies of the registrant . . . , which are changeable only if authorized by shareholder vote."  *Id.* § 80a-8(b)(2).

form for open-ended investment companies, and provided guidelines (the "Guides") for preparing and filing Form N-1A. *See* 1983 Guidance, 48 Fed. Reg. at 37,958. Guide 19 states the SEC's position that "investment . . . of more than 25 percent of the value of the registrant's assets in any one industry represents concentration." *Id.* at 37,962. A fund that intends to concentrate "should . . . specify in the prospectus the industry or group of industries in which it will concentrate." *Id.* If the fund does not intend to concentrate, "no further investment may be made in any given industry if, upon making the proposed investment, 25 percent or more of the value of the registrant's assets would be invested in such industry." *Id.* While Guide 19 therefore prohibits a non-concentrating fund from making asset purchases that would cause it to exceed the 25 percent threshold, it also allows for concentration by so-called "passive increase" -- "when securities of a given industry come to constitute more than 25 percent of the value of the registrant's assets *by reason of changes in value of either the concentrated securities or the other securities*." *Id.* (emphasis added). In that circumstance, although the fund would otherwise be "concentrat[ing]" as defined under Guide 19, "the excess need not be sold." *Id.*

In 1998, the SEC adopted amendments to Form N-1A. *See*
Registration Form Used by Open-End Management Investment Companies, 63
Fed. Reg. 13,916 (Mar. 23, 1998) ("1998 Guidance"). The 1998 Guidance
recognized the SEC's position that "a fund investing more than 25% of its assets
in an industry is concentrating in that industry" and "incorporated this
percentage test into [amended] Form N-1A." *Id.* at 13,927.

B.     *Procedural History*

Plaintiffs filed this complaint on May 21, 2018, alleging that the
Fund breached a contract with its shareholders based on its Concentration
Policy. Plaintiffs allege that the Fund's prospectus and SAI constituted an offer
by the Fund to manage its investments according to the policies set forth therein,
including the Concentration Policy. Plaintiffs further allege that class members
"accepted that offer when they purchased and continued to hold their shares" in
the Fund, thereby creating an enforceable contract. App'x at 17.

According to Plaintiffs, the Fund's Concentration Policy "prohibits
investment of more than 25% of the value of total assets of the Fund in any single
industry at any given time." App'x at 12. Plaintiffs allege that the Fund violated
the Concentration Policy at least three times in 2015: (1) on March 31, 2015, when

7

27.3% of the Fund's net assets became concentrated in the healthcare industry, with the Fund holding 26% of its net assets in Valeant Pharmaceuticals International, Inc., a healthcare company; (2) on June 30, 2015, when 30% of the Fund's net assets were concentrated in the healthcare industry, with the Fund holding 28.7% of its net assets in Valeant; and (3) on September 30, 2015, when 26% of the Fund's net assets became invested in the healthcare industry. The complaint alleges that this concentration caused Plaintiffs and putative class members to suffer losses in the value of their shares when there was a sharp decline in the value of the Fund's healthcare industry investments and the Fund failed to take corrective action. The Fund moved to dismiss for failure to state a claim, arguing that its adoption and publication of the Concentration Policy did not form a contract with Plaintiffs. The Fund also argued that, assuming a contract was formed, the Complaint failed to allege a breach because SEC guidance to the 1940 Act, which is incorporated in the policy's definition of concentration, allows for concentration that results from passive changes in value.

The district court granted the Fund's motion to dismiss. The district court concluded that Plaintiffs failed to allege a contract based on the

8

Concentration Policy because it found there was no offer, intent to be bound, or meeting of the minds. In the alternative, the district court held that, even assuming the existence of an enforceable contract, Plaintiffs failed to sufficiently allege a breach. The district court held that the 1998 Guidance continues to allow for concentration by passive increase, and therefore concluded that the complaint failed to allege a breach of the Fund's Concentration Policy. Judgment was entered accordingly on October 18, 2018. This appeal followed.

### *STANDARD OF REVIEW*

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[W]e accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere

9

conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

## *DISCUSSION*

We assume, without deciding, that Plaintiffs plausibly alleged the existence of a contract that included the Concentration Policy as an enforceable term that could not be changed without a shareholder vote. We reach only the district court's alternative holding and conclude that, even assuming the existence of a binding contract, Plaintiffs failed to plausibly allege a breach.

## I. *Applicable Law*

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal quotation marks omitted).[2] At issue here is only whether the Fund failed to perform under the contract -- *i.e.*, whether the Fund breached the Concentration Policy.

---

[2]  Both parties agree that either New York or Maryland law applies and there is no conflict between the two. We therefore apply New York law. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (holding that choice-of-law analysis is not required where there is no actual conflict).

Because we must determine the meaning of the Concentration Policy, including the SEC guidance incorporated therein, the threshold question is whether the terms of the Concentration Policy are ambiguous. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). A contract is unambiguous "where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (internal quotation marks and brackets omitted). Conversely, a contract is ambiguous if the language "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Krumme*, 238 F.3d at 139 (internal quotation marks omitted).

Under New York law, "when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein," and "[t]he words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties." *Mazzola v. Cty. of Suffolk*, 533 N.Y.S.2d 297, 297 (2d Dep't 1988) (internal quotation marks omitted). Where "the parties'

11

intent is unambiguously conveyed by the plain meaning of the agreements, . . . interpretation is a matter of law." *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d. Cir. 1999) (internal quotation marks omitted). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

## II.    *Application*

We turn to the question of whether Plaintiffs have plausibly alleged that the Fund concentrated its investments in the healthcare industry in violation of the Concentration Policy. Plaintiffs concede that under the 1983 Guidance a requirement not to concentrate would not give rise to an obligation to divest if the concentration (exceeding 25%) resulted from changes in market values rather than from transactions by the Fund. They argue, however, that the 1998 Guidance rescinded the 1983 Guidance and that the 1998 Guidance does not permit concentration by passive increase. We disagree.

Plaintiffs contend that because the 1998 Guidance rescinded the 1983 Guidance, the Concentration Policy did not incorporate by reference the 1983

12

Guidance's definition of concentration.[3]  Relying on a footnote from the 1998

Guidance, Plaintiffs argue that "the SEC unambiguously states that *all* prior

Guides, [Generic Comment Letters] and Guide Releases were not being

republished, were rescinded, and should not be applied henceforth."  Appellants'

Br. at 35-36 (citing 1998 Guidance, 63 Fed. Reg. at 13,940 n.214).[4]  At the very

least, Plaintiffs argue that the Concentration Policy is ambiguous and its meaning

should not be resolved at the motion to dismiss stage.

The 1998 Guidance, however, is not ambiguous -- it did not rescind

Guide 19 of the 1983 Guidance.  After explaining that "[t]he Commission

proposed to continue to require a fund to disclose . . . any policy to concentrate,"

the 1998 Guidance cites Guide 19 in noting that the SEC had "taken the position

. . . that a fund investing more than 25% of its assets in an industry is

concentrating in that industry."  1998 Guidance, 63 Fed. Reg. at 13,927 n.99.  The

---

[3]      Assuming the Concentration Policy was a contractual obligation, because the term that the parties unambiguously incorporated into the contract is a provision of a statute (the term "concentrate" as stated in the 1940 Act), the meaning of the Fund's obligation not to "concentrate" is not determined in the manner in which courts ordinarily determine the meaning of an ambiguous contractual provision.  The meaning of term as used in the 1940 Act is its meaning in the contract.

[4]      The Guide Releases were the guidelines initially adopted by the SEC in 1972 to assist funds in preparing and filing registration statements.  1998 Guidance, 63 Fed. Reg. at 13,940 n.209.  The Guide Releases are different from the Guides provided by the SEC in 1983.

1998 Guidance then states that the SEC "*continues* to believe that 25% is an appropriate benchmark to gauge the level of investment concentration that could expose investors to additional risk" and that "[t]he Proposed Amendments incorporated this percentage test into Form N-1A." *Id.* (emphasis added). "[T]his percentage test," as Plaintiffs admit in their brief, refers back to the sentence that cites Guide 19, and Guide 19's percentage test makes clear that, for purposes of concentration, valuation is at the time of purchase. *See* 1983 Guidance, 48 Fed. Reg. at 37,962.

While not expressly speaking to the issue of passive increases, the section of the 1998 Guidance addressing concentration cites to and effectively incorporates Guide 19, which allows for such increases. It repeatedly indicates continuity with the SEC's previous policy regarding concentration. *See* 1998 Guidance, 63 Fed. Reg. at 13,927 ("The Commission proposed to continue to require a fund to disclose . . . any policy to concentrate . . . .") (emphasis added); *see also id.* (explaining, after noting the previous position taken by the Commission, that the "Proposed Amendments incorporated *this percentage test*") (emphasis added); *see also id.* ("the Commission *continues* to believe") (emphasis added). Nothing in the 1998 Guidance suggests a change in SEC policy

14

regarding concentration such as rescinding the prior exception for passive increases.[5] We assume that the agency would not adopt such a major change *sub silentio*, in a guidance document that cites and repeatedly indicates continuity with prior guidance on the issue in question. If the SEC had indeed adopted such a change, non-concentrating funds would be required to constantly monitor for sudden increases and decreases in asset values, and adjust their investments in each industry to avoid exceeding the 25% threshold.[6] It seems doubtful that the SEC would adopt such a major change without calling attention to it and without explanation.

Accordingly, the Concentration Policy defines concentration by reference to Guide 19 of the 1983 Guidance, and so a fund is concentrating in an

_____

[5] Plaintiffs rely in significant part on a footnote in the 1998 Guidance, which states that the Guides "have not been republished" and "will [not] apply to registration statements prepared on the amended Form." *See* 1998 Guidance, 63 Fed. Reg. at 13,940 n.214. Although the 1998 Guidance may have generally rescinded prior guidance to write on a clean slate, it incorporated by reference and thus retained Guide 19's definition of concentration, and nothing in the text of the 1998 Guidance suggests a change from that definition. *Cf. Blackrock Multi-Sector Income Tr.*, SEC No-Action Letter, 2013 WL 3477065, at *4 (July 8, 2013) ("Although the Guides have since been rescinded, Guide 19 may be generally instructive with respect to industry concentration.").

[6] Plaintiffs suggest that such monitoring and compliance could be accomplished by means of sophisticated software rather than labor-intensive manual monitoring. Even assuming this were true, the adoption of such software would itself represent a significant undertaking, and would perhaps also require major changes in investment practices and strategy.

industry when, at the time of purchase, investing in an industry would lead the fund to have more than 25% of its net assets in that industry. *See* 1983 Guidance, 48 Fed. Reg. at 37,962.

Here, Plaintiffs alleged only that the Fund "violated the Concentration Policy by allowing its investment in healthcare industry stocks . . . to exceed 25% of the value of its net assets and failing to take any action to bring the Fund within its policy limitations." App'x at 17-18. Because the 1998 Guidance -- and by extension the Concentration Policy -- allows for such passive increases, Plaintiffs have failed to allege a violation of the Concentration Policy.

## *CONCLUSION*

For the reasons set forth above, the judgment of the district court is AFFIRMED.

16