19-2330-cv
*Dane v. UnitedHealthcare Ins. Co., et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2019

(Argued:  February 6, 2020      Decided: September 10, 2020)

Docket No. 19-2330-cv

MARK DANE, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

*v.*

UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTH GROUP, INC., AARP,
INC., AARP SERVICES, INC., AARP INSURANCE PLAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Before:      JACOBS, CALABRESI, AND CHIN, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the

District of Connecticut (Underhill, *C.J.*), dismissing, pursuant to Federal Rule of

Civil Procedure 12(b)(6), plaintiff-appellant's amended complaint asserting that

defendants-appellees violated Connecticut and District of Columbia law in entering into a licensing agreement with respect to a group plan for Medicare supplement insurance. Plaintiff-appellant alleged that defendants-appellees' royalty fee arrangement constituted an unlawful "premium rebate" in violation of Connecticut and District of Columbia anti-rebating insurance laws. The district court rejected the claim as well as plaintiff-appellant's remaining consumer fraud, statutory theft, and common law claims.

AFFIRMED.

———————————

ANDREW S. LOVE (Susan K. Alexander, Stuart A. Davidson, Christopher C. Gold, and Dorothy P. Antullis, *on the brief*), Robbins Geller Rudman & Dowd LLP, San Francisco, California and Boca Raton, Florida, *and* Sean K. Collins, Law Offices of Sean K. Collins, Boston, Massachusetts, *for Plaintiff-Appellant.*

MEAGHAN VERGOW (Brian D. Boyle, Samantha M. Goldstein, and Jennifer B. Sokoler, *on the brief*), O'Melveny & Myers LLP, Washington, D.C. *and* New York, New York, *for Defendants-Appellees United HealthCare Insurance Company and UnitedHealth Group, Inc.*

Jeffrey S. Russell, Noah M. Weissman, and Alec Winfield Farr, Bryan Cave Leighton Paisner LLP, St. Louis, Missouri, New York, New York and Washington, D.C., *and* James T. Shearin, Pullman

2

& Comley, LLC, Bridgeport, Connecticut, *for Defendants-Appellees AARP, Inc., AARP Services, Inc., and AARP Insurance Plan.*

---

CHIN, *Circuit Judge*:

In 1997, UnitedHealthcare Insurance Company ("UnitedHealthcare") entered into an agreement with AARP Insurance Plan (the "Plan") to license the intellectual property of AARP, Inc. ("AARP") for use with its Medicare supplement insurance program (the "1997 agreement"). Under the terms of the 1997 agreement, the Plan was permitted to deduct a royalty fee from member premiums in exchange for the license. Although the royalty fee is not described in the policies, UnitedHealthcare's advertisements identify and explain the royalty fee arrangement.

Plaintiff-appellant Mark Dane, individually and on behalf of all others similarly situated, commenced this action alleging that defendants-appellees UnitedHealthcare, UnitedHealth Group, Inc., AARP, AARP Services, Inc., and the Plan (collectively, "defendants"), participated in a unlawful royalty fee arrangement in violation of the Connecticut and District of Columbia ("D.C.") anti-rebating statutes. The district court dismissed the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

3

As discussed more fully below, we hold that Dane did not state an unlawful rebate claim under Connecticut or D.C. law because he failed to plausibly allege any ascertainable loss or injury as a result of his purchase of Medicare supplement insurance ("Medigap") or the AARP royalty fee. We also agree with the district court that Dane failed to plausibly allege consumer fraud, statutory theft, or common law claims. Accordingly, the district court's judgment dismissing the amended complaint is AFFIRMED.

## BACKGROUND

The facts alleged in the amended complaint are assumed to be true. UnitedHealth Group, Inc., an insurance company incorporated in Minnesota with its headquarters in Minnesota, conducts substantial business in Connecticut and maintains a wholly owned subsidiary, UnitedHealthcare, based in Hartford, Connecticut (collectively, "United"). UnitedHealthcare provides Medigap coverage to individual AARP members through a group plan. An individual can purchase a Medigap policy, sold by a private company (such as UnitedHealthcare), to help pay health care costs that are not covered by original Medicare. *See* 5 Soc. Sec. Law & Prac. § 66:36 (2020). State and federal law comprehensively regulate Medigap insurance policy terms, rates, and marketing.

4

*See* 42 U.S.C. § 1395ss; *see also Vencor Inc. v. Nat'l States Ins. Co.*, 303 F.3d 1024, 1026 (9th Cir. 2002) (describing regulatory scheme governing Medigap insurance).

AARP is a non-profit corporation organized under D.C. law, with its primary place of business in Washington D.C., that advocates for the interests of seniors. The Plan is a third-party grantor trust organized by AARP. The Plan serves as the group policy holder for AARP members enrolled in United's Medigap insurance. As the group policy holder, the Plan collects premium payments from member insureds (known as the "member contributions") and pays United the group plan premium.

Under the 1997 agreement, United is responsible for administering the Medigap program, including obtaining regulatory approvals for advertising materials and premium rates charged to insureds. The 1997 agreement instructs the Plan to deduct a 4.9% royalty fee and certain expenses from the AARP member contributions before transmitting the remaining funds to United. The royalty fee is a payment to license AARP's intellectual property in connection with the United Medigap program. *See* J. App'x at 247 (1997 Agmt. § 6.1 ("AARP shall be entitled to receive an allowance for AARP's sponsorship . . . and the

5

license to use the AARP Marks.")). The royalty payments are then transmitted from the Plan to AARP.

United's Medigap advertisements and disclosures identify and explain the AARP royalty fee arrangement and its purpose. *See* Dist. Ct. Dkt. 64-12 ("AARP endorses the AARP® Medicare Supplement Insurance Plans, insured by UnitedHealthcare Insurance Company . . . . UnitedHealthcare Insurance Company pays royalty fees to AARP for the use of its intellectual property."); 64-13 ("The AARP Medicare Supplement Insurance Plans carry the AARP name and UnitedHealthcare pays a royalty fee to AARP for use of the AARP intellectual property.").[1]

Dane is an AARP member and United Medigap insured residing in Connecticut. He has been enrolled in United's Medigap plan in Connecticut since January 1, 2014. Dane has paid the premium for his coverage and has not alleged that he purchased or received his policy in D.C. Dane was alerted to

---

[1]    This Court may review United's publicly filed Medigap advertisements and disclosures on a motion to dismiss because they are integral to the amended complaint concerning the royalty fee arrangement between United and AARP. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) ("A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011))).

defendants' allegedly unlawful scheme in March 2018 through his counsel. Dane alleges that "[b]ut for [d]efendants' unlawful and deceptive acts," he "would not have willingly agreed to pay an illegal 4.9% charge above the premiums due to" United. J. App'x at 22.

On behalf of a nationwide class of current and former insureds, Dane filed an amended complaint on August 17, 2018, asserting seven Connecticut-law claims and one claim under D.C. law. Dane alleged violations of consumer protections laws, including the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110b(a)) ("CUTPA") and the D.C. Consumer Protection Procedures Act (D.C. Code § 28-3904) ("CPPA"). Dane also asserted a variety of common law claims under Connecticut law, including, for example, breach of contract and breach of the implied covenant of good faith and fair dealing, as well as a claim for statutory theft under Conn. Gen. Stat. § 52-564. Dane contended that the AARP royalty fee constituted an unlawful "premium rebate" under Connecticut and D.C. law. J. App'x at 17, 25. More specifically, Dane asserted that defendants' illegal rebating scheme deceives "consumers into directly funding their illegal rebating activities" by permitting AARP to "siphon off" 4.9% from the "member contributions" paid by plaintiff and others similarly

7

situated as a "royalty" or unlawful rebate. J. App'x at 16, 19, 40. Dane sought damages, injunctive relief, and "restitution and disgorgement" of revenues taken from the class and paid to AARP. J. App'x at 55. The district court had diversity jurisdiction over the case pursuant to 28 U.S.C § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005.

Defendants moved to dismiss the amended complaint on September 17, 2018 for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In an order issued June 24, 2019, the district court granted defendants' motion to dismiss. The district court concluded that the AARP royalty did not constitute an unlawful premium rebate in violation of Connecticut's and D.C.'s anti-rebating statutes because Dane failed to plausibly allege that the "payment to AARP induces AARP members to choose United Medigap [c]overage over other insurance options because individual insureds are not receiving any monetary award for choosing United." S. App'x at 4. Moreover, the district court concluded that Dane failed to allege that the Plan -- the third-party grantor trust serving as the group policy holder for AARP members -- was induced to insurance. The district court also held that even if the royalty was an unlawful rebate, the Connecticut filed rate doctrine independently barred the lawsuit.

8

Finally, the district court also dismissed Dane's consumer fraud, statutory theft, and common law claims for failure to state a claim.

Judgment entered June 25, 2019. This appeal followed.

*DISCUSSION*

On appeal, Dane contends that the district court erred in granting defendants' motion to dismiss by improperly: (1) engaging in fact finding by concluding that the royalty was not an unlawful rebate in violation of state law; (2) applying the filed rate doctrine to bar the state law claims when no Connecticut court had previously relied on the doctrine; and (3) ignoring allegations in the amended complaint in dismissing Dane's consumer fraud and common law claims.

We "may affirm [the district court's decision] on any basis supported by the record." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014). We conclude, as a matter of law, that Dane did not state an unlawful rebate claim under Connecticut or D.C. law because he failed to plausibly allege any ascertainable loss or injury caused by his purchase of Medigap insurance or the AARP royalty fee arrangement. Consequently, we need not decide whether the royalty fee is an unlawful rebate or rely on the filed rate doctrine or certify a

9

question to the Connecticut Supreme Court on the issues presented. We agree with the district court that Dane failed to plausibly allege consumer fraud or common law claims.

## I. *Unlawful Rebate Claims*

This Court has not considered whether a royalty fee arrangement such as that present here, which provides a percentage of premiums collected through a group insurance plan in exchange for licensing intellectual property, constitutes an unlawful premium rebate under Connecticut and D.C. law. We need not address this issue today because, even assuming without deciding that the royalty fee constituted an unlawful premium rebate, Dane's claim fails as a matter of law because he did not plausibly allege any ascertainable loss or injury caused by his purchase of insurance or the AARP licensing arrangement.

### A. *Standard of Review*

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

10

marks omitted).  "[W]e accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (brackets omitted).

**B.**    *Applicable Law*

Both Connecticut and D.C. enacted anti-rebating statutes prohibiting the unlawful use of premium rebates as an inducement to purchase insurance. Under Connecticut law:

> No insurance company doing business in [Connecticut],
> . . . shall pay or allow, or offer to pay or allow, as
> inducement to insurance, any rebate of premium
> payable on the policy, or any special favor or advantage
> in the dividends or other benefits to accrue thereon, or
> any valuable consideration or inducement not specified
> in the policy of insurance.

Conn. Gen. Stat. § 38a-825.  D.C.'s anti-rebating statute similarly prohibits the unlawful use of premium rebates:

> (a) No person shall knowingly:
>
>         . . .

11

> (2) Pay, allow, give, or offer to pay, allow, or give, directly or indirectly as inducement to such policy or contract:
>
>> (A) A rebate of premiums payable on the policy or contract . . . .

D.C. Code § 31-2231.12(a)(2).

Under Connecticut law, claims based on illegal insurance practices, including unlawful rebates, are governed by the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815.[2] This Court has explained that:

> CUIPA does not provide litigants an independent cause of action, so Connecticut plaintiffs are allowed to use CUTPA as a vehicle to bring CUIPA claims. CUTPA prohibits any person from 'engag[ing] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,' Conn. Gen. Stat. § 42-110b(a), and provides a right of action . . . . CUIPA in turn defines unfair or deceptive acts or practices in the insurance business, and prohibits any person from engaging in such practices in Connecticut. *See id.* § 38a-815.

*Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 94-95 (2d Cir. 2018); *see also Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn.

---

[2] Conn. Gen. Stat. § 38a-816(9) incorporates as a prohibited practice any violation of Conn. Gen. Stat. § 38a-825, the unlawful rebate statute.

12

602, 623 (2015) (Connecticut Supreme Court confirming that "individuals may bring an action under CUTPA for violations of CUIPA" (citing *Mead v. Burns*, 199 Conn. 651, 663 (1986))).  Thus, a private individual pursuing a claim against an insurer for an unlawful insurance practice must plausibly allege a CUIPA violation and satisfy the elements of a CUTPA claim.  *See Engelman v. Conn. Gen. Life Ins. Co.*, No. CV 920337028S, 1997 WL 524173, at \*8 (Conn. Super. Ct. Aug. 12, 1997), *as corrected* (Dec. 8, 1997) ("Having proved the CUIPA violation, the plaintiff had to complete the CUTPA picture with proof of an 'ascertainable loss.'" (quoting Conn. Gen. Stat. Ann. § 42-110g(a))).[3]

CUTPA provides a private cause of action for "[a]ny person who suffers *any ascertainable loss* of money or property, real or personal, as a result of the use or employment" of an unfair or deceptive act.  Conn. Gen. Stat. § 42-110g(a) (emphasis added).  It is well-settled that "[t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief."

---

[3]    Dane's complaint alleges that the rebating scheme "is a blatant violation of the [CUIPA], Conn. Gen. Stat. § 38a-815."  J. App'x at 15.  The complaint also notes, correctly, that "violations of CUIPA are violations of the [CUTPA], Conn. Gen. Stat. § 42-110b(a) and give rise to a cause of action under Conn. Gen. Stat. § 42-110g(a)."  J. App'x at 46.

*Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 615 (1981); *see, e.g., Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 238 (2d Cir. 1998) (affirming summary judgment on the CUTPA claim after plaintiff failed to demonstrate ascertainable loss). "An ascertainable loss is a loss that is capable of being discovered, observed or established." *Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*, 310 Conn. 797, 822 (2014) (internal quotation marks omitted).

## C. *Application*

We conclude that Dane's unlawful rebate claim fails as a matter of law because, even assuming without deciding that the royalty fee was an unlawful rebate in violation of CUIPA, Dane did not plausibly allege any ascertainable loss arising from the payment of his Medigap premiums. Dane concedes that he paid the premium rate approved by state regulators and received the Medigap insurance for which he contracted. *See* Appellant's Reply Br. at 22 (conceding that "[Dane] received the coverage he expected."). Thus, there can be no ascertainable loss "that is capable of being discovered, observed or established." *Fairchild Heights Residents Ass'n, Inc.*, 310 Conn. at 822. Dane has not plausibly alleged any identifiable loss, and, indeed, although he was aware of the AARP royalty arrangement at the start of this litigation, he nevertheless

14

remained enrolled in the Medigap program and continued to pay his premiums in full.

At bottom, Dane alleges a theory of overpayment. Dane contends that he paid an additional 4.9% in premium costs "on top" of what is necessary to "bind . . . coverage." Appellant's Br. at 11. He argues that the additional 4.9% charged "on top of the premium due for insurance coverage" should be used to "reduce the costs of the plan, or [be] returned to the member insureds." J. App'x at 20, 29. Dane's description of a payment "on top" of what is required to "bind coverage" is simply a mischaracterization -- he paid the state regulator-approved rate and no more than that rate.[4] As the district court correctly explained, Dane "cannot plausibly allege any loss caused by United's allocation of its premium revenue" because he "did not pay more than the [regulator]-approved filed rate for the coverage he received, and he could not have purchased United Medigap coverage for any other rate." S. App'x at 12. Further, because Dane failed to

---

[4]     We note that Dane failed to allege any payment beyond the rate expressly approved by Connecticut and D.C. insurance regulators. These state agencies exercise an independent duty of ensuring that the premium rates charged by Medigap providers "not be excessive." Conn. Gen. Stat. § 38a-481(b); *see* Conn. Agencies Regs. § 38a-474-2(a)-(c); D.C. Mun. Regs. tit. 26-A, §§ 2214.1, 2216.1. These agencies review United's premium rates to ensure they are adequate to support the promised benefits. *See* Conn. Gen. Stat. § 38a-495a(k); Conn. Agencies Regs. §§ 38a-474-2(d)(6), 38a-474-3(a), (b)(1); D.C. Code § 31-3704; D.C. Mun. Regs. tit. 26-A, § 2212.1(a).

15

allege any inadequate coverage under his United Medigap policy, he failed to sufficiently allege any theory of overpayment.

Dane's theory of the case is fundamentally flawed because it is wholly speculative: he assumes that any costs saved from the AARP royalty fee would automatically be used to lower the costs of the Medigap plan or be returned to the AARP member insureds. *See* J. App'x at 55 (seeking "restitution and disgorgement of Defendants' revenues to Plaintiff and the Class"). Dane merely presumes that savings would be passed on to member insureds. In fact, of course, "[i]n lieu of passing on all or some portion of such savings, businesses may, for example, reduce debt, increase employee compensation, increase advertising expenditures, invest in new products or business opportunities -- all the while being mindful of what competitors are doing in the marketplace." *Friedman v. AARP, Inc.*, No. 14-00034 DDP (PLA), 2019 WL 5683465, at *6 (C.D. Cal. Nov. 1, 2019). To be sure, the 1997 agreement precisely contemplates that AARP may use premium contributions for a variety of costs, including administrative and operating expenses. Accordingly, because Dane failed to plausibly allege any ascertainable loss or injury resulting from the purchase of

16

insurance, there can be no CUTPA claim premised on an unlawful insurance practice under Connecticut law.[5]

Moreover, we are not persuaded by Dane's policy arguments supporting his unlawful rebate theory. He argues that the royalty allows United to achieve a high share of the Medigap market, but AARP members are not bound to use United Medigap coverage. The arrangement between United and AARP has been broadly disclosed through advertising materials, and the premium rates as a whole (including the royalty fee) have been approved by the relevant state regulators. Thus, the policy concerns underlying the anti-rebating statutes are not undermined by this licensing arrangement. *See* 1 Steven Plitt et al., Couch on Insurance § 2:32 (3d ed. Supp. 2020) (anti-rebating statutes are intended "to protect the solvency of the insurance company, prevent unfair discrimination among insureds of the same class, protect the quality of service, avoid concentration of the market in a few insurance companies, and avoid unethical sales practices"); *see also McGuire v. Am. Family Mut. Ins. Co.*, 448 F. App'x 801, 810 (10th Cir. 2011) (noting that the purpose of Kansas anti-rebating

---

[5] We also reject Dane's contention that the district court prematurely resolved issues of fact in granting defendants' motion to dismiss. The undisputed, relevant facts show that Dane's premium rebate claim fails as a matter of law.

statute was "to prevent or prohibit unfair discrimination practices in the business of insurance").

Finally, we note that Dane's lawsuit against defendants unfolds against the backdrop of nationwide litigation challenging the AARP royalty fee as some form of an unlawful payment. For the most part, nearly every case has been unsuccessful and has been dismissed at the motion to dismiss phase or upon voluntary dismissal. *See, e.g.*, *Friedman*, 2019 WL 5683465, at \*8, *appeal dismissed*, No. 19-56386, 2020 WL 2732230 (9th Cir. Mar. 26, 2020); *Christoph v. AARP, Inc.*, No. 18-cv-3453, 2019 WL 4645172, at \*5 (E.D. Pa. Sept. 23, 2019); *Levay v. AARP, Inc.*, No. 17-09041 DDP (PLAX), 2019 WL 2108124, at \*7 (C.D. Cal. May 14, 2019); *Sacco v. AARP, Inc.*, No. 18-cv-14041, Dkt. 90 (S.D. Fla. 2018). *But see Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 47 (D.D.C. 2019) (denying motion to dismiss); *Bloom v. AARP, Inc.*, No. 18-cv-2788, 2018 WL 10152230, at \*4 (D.N.J. Nov. 30, 2018) (same). Likewise, we conclude here that Dane failed to plausibly allege a cognizable claim based on his purchase of Medigap insurance through the AARP-UnitedHealthcare plan.

## II.    *Consumer Protection Claims*

After concluding that Dane failed to state a valid unlawful rebate claim, we have little trouble holding that his claims under Connecticut's and D.C.'s consumer protection laws also fail.  First, for the reasons set forth above, we conclude that Dane's failure to plausibly allege any ascertainable loss precludes any relief under CUTPA.  *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218 (2008) ("[T]o be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation.").  Second, turning to Dane's unlawful rebate claim under D.C. law, we similarly conclude that Dane's failure to allege any loss or injury resulting from his purchase of insurance is fatal to his claim under the CPPA.[6]

Here, the district court dismissed Dane's D.C. consumer fraud claim after concluding that the CPPA did not apply because Dane failed to allege that he "purchased or received his policy . . . in the District of Columbia."  S. App'x at 11.  On appeal, Dane contends that the CPPA has "extraterritorial reach" and should apply because AARP's actions in D.C. gave rise to his claims.  Appellant's

---

[6]    In Dane's complaint, he alleges that defendants' "conduct is also a violation of D.C. Code § 31-2231.12 [the anti-rebating statute] which gives rise to a cause of action under D.C. Code § 28-3901, *et seq.* [the CPPA]."  J. App'x at 52.

19

Br. at 40.  We need not decide whether the CPPA applies to extraterritorial claims because, for the reasons set forth above, we conclude that Dane failed to plausibly allege any injury as a result of his purchase of insurance or the AARP royalty fee.

While the D.C. statute does not expressly require a showing of "ascertainable loss," the D.C. Court of Appeals has explained that the CPPA does not dispense with the District's "longstanding injury-in-fact requirement," which D.C. courts follow "for prudential reasons." *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 988 (D.C. 2015) (citing *Grayson v. AT & T Corp.*, 15 A.3d 219, 244-45 (D.C. 2011)).  Thus, even though the D.C. courts were created "under Article I of the Constitution, rather than Article III, [the D.C.] court[s] ha[ve] followed consistently the constitutional standing requirement embodied in Article III." *Little v. SunTrust Bank*, 204 A.3d 1272, 1273-74 (D.C. 2019).  Accordingly, to state a claim under the CPPA, Dane must plausibly allege "an injury that is concrete and particularized, . . . fairly traceable to the challenged conduct of the defendant[,] and likely to be redressed by a favorable judicial decision." *Id.* at 1274 (internal quotation marks omitted); *see Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (collecting cases for the proposition that "a lawsuit under

20

the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself").  For the reasons explained above, Dane failed to show any concrete and particularized injury because he paid only the regulator-approved rate and received the Medigap insurance he contracted for.[7]

## III.    *Remaining Claims*

Finally, the district court dismissed Dane's remaining common law claims and statutory theft claim after concluding that he failed to plead the requisite elements for each claim.  For substantially the reasons explained by the district court, we agree that Dane failed to plausibly allege the requisite elements for his remaining common law claims and his statutory theft claim under Connecticut law.

## *CONCLUSION*

For the reasons set forth above, the district court's judgment is **AFFIRMED**.

---

[7]     Dane's allegation that had he "known the truth [he] would have purchased [his] insurance from a reputable carrier not engaged in risky illegal activities" is conclusory and insufficient, on its own and without detail, to show a concrete and particularized injury, particularly in light of his decision to remain in the United Medigap plan.  J. App'x at 37.